## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------x
:
In re:                                          :          **Chapter 11**
:
**SCHOOL SPECIALTY, INC., et al.,**[1]          :          **Case No. 13-10125(KJC)**
:
:          **Jointly Administered**
:
                                Debtors.        :
-----------------------------------------------------x          Re: Doc No. 12, 86

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(3),
364(D)(1), 364(E) AND 507, (B) UTILIZE CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363, (C) GRANT PRIMING LIENS AND SUPERPRIORITY CLAIMS
TO THE DIP LENDERS, (D) PROVIDE ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363
AND 364, AND (E) USE CASH COLLATERAL AND PROCEEDS OF THE ABL DIP
FACILITY TO REPAY OBLIGATIONS ARISING UNDER THE PREPETITION ABL
CREDIT AGREEMENT AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] dated January 28, 2013, of School Specialty, Inc.

("School Specialty" and, together with certain of its affiliates, the "Borrowers") and its affiliated

debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the

"Chapter 11 Cases") pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(3), 364(d)(1), 364(e)

and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"),

Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Bankruptcy Rules (the "Local Rules") of the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court"), seeking, among other things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and state of incorporation, are: School Specialty, Inc. (Wisc.; 1239), Bird-In-Hand Woodworks, Inc. (N.J.; 8811), Califone International, Inc. (Del.; 3578), Childcraft Education Corp. (N.Y.; 9818), ClassroomDirect.com, LLC (Del.; 2425), Delta Education, LLC (Del.; 8764), Frey Scientific, Inc. (Del.; 3771), Premier Agendas, Inc. (Wash.; 1380), Sax Arts & Crafts, Inc. (Del.; 6436), and Sportime, LLC (Del.; 6939). The address of the Debtors' corporate headquarters is W6316 Design Drive, Greenville, Wisconsin 54942.

[2] Capitalized term used but not defined herein shall have the meanings ascribed to such terms in the Motion.

(a)     authorization for each Borrower to obtain postpetition financing and to guaranty the obligations of each other Borrower in connection with the DIP Financing (as defined below), and for each of the other Debtors and certain of their non-debtor affiliates (the "Guarantors") to guaranty the Borrowers' obligations in connection with the DIP Financing, consisting of:

(i)     a super-priority credit facility made available to the Borrowers in an aggregate principal amount of up to $143,124,129 consisting of (A) a credit facility in the amount of $50,000,000 in respect of new money funding (the "Bayside DIP Facility"); and (B) $93,124,129 in respect of the Prepetition Term Loan Debt (as defined below),[3] subject to the terms and conditions hereof, with Bayside Finance, LLC ("Bayside" and, in its capacity as agent under the Bayside DIP Facility, the "Bayside DIP Agent"), for itself and one or more funds managed and/or advised by Bayside and its designees (the "Bayside DIP Lenders"); and

(ii)     a super-priority revolving credit facility made available to the Borrowers in an aggregate principal amount of up to $175,000,000 (as amended and modified by Amendment No. 1 to Debtor-in-Possession Credit Agreement, as attached hereto as Exhibit B (the "ABL Amendment No. 1"), the "ABL DIP Facility" and, together with the Bayside DIP Facility, the "DIP Financing") with Wells Fargo Capital Finance, LLC ("Wells Fargo") or an affiliate acting as administrative agent (in such capacity, the "ABL DIP Agent" and, together with the Bayside DIP Agent, the "DIP Agents") for itself and a syndicate of financial institutions (collectively, the "ABL DIP Lenders" and, together with the Bayside DIP Lenders, the "DIP Lenders") in accordance with that certain Debtor-in-Possession Credit Agreement, dated as of January 31, 2013

---

[3] As set forth below, this portion of the relief requested in the Motion was withdrawn at the Interim Hearing (as defined below).

01:13365635.1

(as may be amended, supplemented or modified from time to time, including by ABL Amendment No. 1, the "ABL DIP Credit Agreement" and, together with the Bayside DIP Credit Agreement (as defined below), the "DIP Credit Agreements" and, the DIP Credit Agreements together with all such instruments or documents executed and delivered in connection therewith or related thereto, the "DIP Documents");

(b)     authorization for the Debtors to: (i) use all cash collateral consisting of proceeds of ABL Priority Collateral (as defined in the DIP Intercreditor Agreement) coming into the possession or control of the Debtors to reduce the Obligations (as defined in the Credit Agreement dated as of May 22, 2012 (as amended, supplemented or otherwise modified from time to time, the "Prepetition ABL Credit Agreement") among certain of the Debtors, Wells Fargo, as administrative agent and co-collateral agent (in such capacities, the "Prepetition ABL Agent"), and the lenders and other entities party thereto (collectively, the "Prepetition ABL Lenders")) to the extent not repaid or otherwise satisfied with proceeds of the ABL DIP Credit Agreement and, to the extent allowable under Bankruptcy Code section 506(b), pay (A) interest at the default rate set forth in the Prepetition ABL Credit Agreement, (B) all fees, costs, expenses and other charges due or coming due under the Prepetition ABL Documents or in connection with the Prepetition ABL Debt (each as defined below), regardless of whether such fees, costs, interest and other charges are included in the budget set forth in the Prepetition ABL Documents, and (C) all costs and expenses at any time incurred by the Prepetition ABL Agent and Prepetition ABL Lenders in connection with (x) the negotiation, preparation and submission of the Interim Order (as defined below), this Final Order (as defined below) and any other order or document related hereto and (y) the representation of the Prepetition ABL Agent and the Prepetition ABL

Lenders in the Chapter 11 Cases, including in defending against any Lender Claim (as defined

below) (such amounts set forth in subclauses (A) through (C), collectively, the "Allowable ABL

506(b) Amounts" and, together with the Obligations (as defined in the Prepetition ABL Credit

Agreement), the "Prepetition ABL Debt") arising under or in connection with the Prepetition

ABL Credit Agreement and the Loan Documents (as defined in the Prepetition ABL Credit

Agreement) executed in connection therewith (collectively with the Prepetition ABL Credit

Agreement, the "Prepetition ABL Documents"); (ii) upon entry of this Final Order, use the

proceeds of the ABL DIP Facility to fully repay or otherwise satisfy any outstanding Prepetition

ABL Debt; and (iii) deem any extant letters of credit and Bank Product Obligations (as defined

in the Prepetition ABL Credit Agreement) to be issued or otherwise incurred under the ABL DIP

Credit Agreement (such Prepetition ABL Debt, letter of credit obligations and Bank Product

Obligations, collectively, the "ABL Roll Up Obligations")[4];

      (c)     the granting of adequate protection to the secured parties under the Prepetition

ABL Credit Agreement and the Credit Agreement dated as of May 22, 2012 (as amended,

restated, supplemented or otherwise modified from time to time, the "Prepetition Term Loan

Credit Agreement" and, together with the Prepetition ABL Credit Agreement, the "Prepetition

Credit Agreements") among School Specialty, the borrowers and guarantors party thereto, the

lenders party thereto (collectively, the "Prepetition Term Loan Lenders" and, together with the

Prepetition ABL Lenders, the "Prepetition Secured Lenders") and Bayside, as administrative

agent (in such capacity, the "Prepetition Term Loan Agent" and, together with the Prepetition

ABL Agent, the "Prepetition Agents"), and each loan document executed in connection with the

Prepetition Term Loan Credit Agreement (collectively with the Prepetition Term Loan Credit

---

[4] This portion of the relief requested in the Motion has been modified as set forth herein.

01:13365635.1

Agreement, the "Prepetition Term Loan Documents" and, together with the Prepetition ABL Documents, the "Prepetition Loan Documents"), whose liens and security interests are being primed by the DIP Financing; and

(d)    authorization for the Debtors to use any Cash Collateral (each as defined below) in which the Prepetition ABL Agent, any Prepetition ABL Lender, the Prepetition Term Loan Agent or any Prepetition Term Loan Lender (collectively, the "Prepetition Secured Parties") may have an interest and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and all use and diminution in the value of their respective interests in collateral.

Due and appropriate notice under the circumstances of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing (as defined below) having been served by the Debtors on the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Creditors' Committee"), the DIP Agents, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), those parties requesting notice pursuant to Bankruptcy Rule 2002, the forty (40) largest unsecured creditors of the Debtors, the Internal Revenue Service and the Securities and Exchange Commission in compliance with Bankruptcy Rule 4001(b) and (c) and the Local Rules;

An interim hearing on the Motion (the "Interim Hearing") having been held by this Court on January 30, 2013, and this Court having entered an interim order (the "Interim Order") dated January 31, 2013 [Docket No. 86] which, among other things, (i) authorized each Borrower, on an interim basis, to borrow forthwith from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed (A) $175,000,000 pursuant to the ABL DIP

Facility and (B) $25,000,000 under the Bayside DIP Facility (in each case, subject to any limitations on borrowings under the applicable DIP Documents and in accordance with the Approved Budget (as defined in the DIP Credit Agreements),[5] (ii) authorizing each Borrower to guaranty the DIP Obligations (as defined below) of each other Borrower and the Guarantors to guaranty the DIP Obligations of each Borrower, (iii) authorizing the Debtors' use of Cash Collateral, (iv) granting the adequate protection described herein, and (v) scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents, for February 25, 2013 at 11:00 a.m. (ET);

The Debtors having filed (x) a notice of filing of the proposed Final Order (the "Supplemental Notice"), dated February 22, 2013 and (y) executed versions of the DIP Credit Agreements on February 12, 2013; and due and appropriate notice of the Supplemental Notice and the relief requested therein having been served by the Debtors on the following notice parties: (a) (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, Attn: Alan W. Kornberg, Jeffrey D. Saferstein and Elizabeth R. McColm, 1285 Avenue of the Americas, New York, NY 10019 and (ii) Young, Conaway, Stargatt & Taylor, LLP, Attn: Pauline K. Morgan and Joel Waite, Rodney Square, 1000 North King Street, Wilmington, DE 19801, attorneys for the Debtors; (b) (i) Akin Gump Strauss Hauer & Feld, LLP, Attn: Michael Stamer & Meredith Lahaie, One Bryant Park, New York, NY 10036 and (ii) Pepper Hamilton LLP, Attn: David Stratton & David Fournier, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE 19801, attorneys for the Prepetition Term Loan Agent, Prepetition Term Loan Lenders, Bayside DIP Agent and

---

[5] The Approved Budget is attached hereto as Exhibit A.

Bayside DIP Lenders, (c) (i) Goldberg Kohn, Attn: Randall Klein & Jeremy Downs, 55 East Monroe Street, Suite 3300, Chicago, IL 60603 and (ii) Richards, Layton and Finger, P.A., Attn: Paul Heath, One Rodney Square, 920 North King Street, Wilmington, DE 19801, attorneys for the Prepetition ABL Agent and ABL DIP Agent, (d) (i) Brown Rudnick LLP, Attn: Robert Stark, Seven Times Square, New York, NY 10036 and (ii) Venable LLP, Attn: Jamie L. Edmonson (jledmonson@venable.com), 750 Pratt Street, Suite 900, Baltimore, MD 21202, attorneys for the Creditors' Committee, (e) (i) Strook & Stroock & Lavan LLP, Attn: Kristopher M. Hanson & Jonathan D. Canfield (khansen@stroock.com, jcanfield@stroock.com), 180 Maiden Lane, New York, NY 10038 and (ii) Duane Morris LLP, Attn: Michael R. Lastowski, Christopher M. Winter & Jarret P. Hitchings (MLastowski@duanemorris.com, cmwinter@duanemorris.com, JPHitchings@duanemorris.com), 222 Delaware Avenue, Suite 1600, Wilmington, DE 19801, attorneys for the ad hoc group holders of convertible debentures, (f) the U.S. Trustee, Attn: Richard Shepacarter, Esq. and Juliet A. Sarkessian, Esq., (g) those parties requesting notice pursuant to Bankruptcy Rule 2002, and (h) any party that timely filed an objection to the entry of this Final Order;

Upon the record made by the Debtors and other parties in interest at the Interim Hearing and at the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

### IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Disposition*. The Motion is granted on a final basis in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. This Final Order shall become effective immediately upon

01:13365635.1

entry.   The DIP Intercreditor Agreement (as defined below) and that certain Intercreditor Agreement dated as of May 22, 2012 (as amended, supplemented or modified from time to time, the "Prepetition Intercreditor Agreement" and, together with the DIP Intercreditor Agreement, the "Intercreditor Agreements") in all respects are "subordination agreements" for purposes of Bankruptcy Code section 510(a).

2.     *Jurisdiction*.   This Court has core jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363 and 364, Bankruptcy Rules 2002, 4001 and 9014 and the Local Rules.

3.     *Notice*.   Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing, the Interim Order and the Final Hearing constitutes appropriate, due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and the Local Rules, and no further notice of the relief sought at the Final Hearing is necessary or required.

4.     *Debtors' Stipulations*.   Without prejudice to the rights of any other party (but which are subject to the limitations thereon contained in paragraph 23), the Debtors admit, stipulate and agree that:

(a)     As of the date of the commencement of the Chapter 11 Cases (the "Petition Date"):

(i)     the Debtors party to or otherwise obligated under the Prepetition Term Loan Documents, without defense, counterclaim or offset of any kind, were jointly and severally indebted and liable to the Prepetition Term Loan

Lenders under the Prepetition Term Loan Documents in the aggregate principal amount of $92,054,001.06 (including the Early Payment Fee, as defined in the Prepetition Term Loan Credit Agreement) plus $2,606,866.33 in accrued and unpaid interest, plus expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Term Loan Documents), charges, Obligations (as defined in the Prepetition Term Loan Credit Agreement) and all other obligations incurred in connection therewith as provided in the Prepetition Term Loan Documents (collectively, the "Prepetition Term Loan Debt" and, together with the ABL Roll Up Obligations, the "Prepetition Debt"), which Prepetition Term Loan Debt is secured by (collectively, the "Prepetition Term Loan Security Interests"): (X) first priority liens on and security interests in the Term Loan Priority Collateral (as defined in that certain Intercreditor Agreement dated as of January 31, 2013 by and between the ABL DIP Agent and the Bayside DIP Agent (the "DIP Intercreditor Agreement")); and (Y) second priority liens on and security interests in the ABL Priority Collateral (as defined in the DIP Intercreditor Agreement); and

(ii)        the Debtors party to or otherwise obligated under the Prepetition ABL Documents, without defense, counterclaim or offset of any kind, were jointly and severally indebted and liable to the Prepetition ABL Lenders in the aggregate principal amount of not less than $43.496 million in respect of loans and Letters of Credit (as defined in the Prepetition ABL Credit Agreement) made by the Prepetition ABL Lenders plus the Allowable ABL 506(b) Amounts and all

other Obligations (as defined in the Prepetition ABL Credit Agreement), secured by (X) first priority liens on and security interests in the ABL Priority Collateral (together with the Term Loan Priority Collateral, the "Prepetition Priority Collateral") and (Y) second priority liens on and security interests in the Term Loan Priority Collateral (collectively, the "Prepetition ABL Security Interests" and, together with the Prepetition Term Loan Security Interests, the "Prepetition Security Interests"); and

(b)      The Prepetition Debt constitutes the legal, valid and binding obligation of the respective Debtors named in the Prepetition Loan Documents, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from Bankruptcy Code section 362).

(c)      No portion of the Prepetition Debt or any payments made to the Prepetition Agents or the Prepetition Secured Lenders or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law.

(d)      The Debtors hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights of any kind against any of the Prepetition Agents or the Prepetition Secured Lenders.  Each Debtor hereby forever waives and releases any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Agents, each of the Prepetition Secured Lenders, and their respective agents, affiliates, representatives, attorneys, or advisors, in their capacities as such (collectively, the "Lender Parties"), whether arising at law or in equity,

including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law; *provided, however*, that nothing herein or in any of the DIP Documents shall operate as a release or waiver of any claims or causes of action held by any party (including, without limitation, any of the Debtors) against any Debtor, any "affiliate" of any Debtor (as defined in the Bankruptcy Code) or any officer, director or direct or indirect shareholder (or affiliate thereof) of any Debtor.  Each Debtor hereby covenants not to sue any Lender Party on account of any "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

(e)    The Prepetition Security Interests granted to the Prepetition Agents in the Prepetition Priority Collateral pursuant to and in connection with the Prepetition Loan Documents, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Agents, for such Prepetition Agents' benefit and for the benefit of the applicable Prepetition Secured Lenders, (i) are valid, binding, perfected and enforceable liens and security interests in the real and personal property described in the Prepetition Loan Documents, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below) to which the DIP

01:13365635.1

Liens are subject and (C) valid, perfected and unavoidable liens and security interests permitted under the applicable Prepetition Loan Documents, but only to the extent that such liens and security interests are permitted by the applicable Prepetition Loan Documents to be senior to or *pari passu* with the applicable Prepetition Security Interests, and (iv) constitute the legal, valid and binding obligation of the Debtors, enforceable in accordance with the terms of the applicable Prepetition Loan Documents.

     5.    ***Findings Regarding the DIP Financing.***

    (a)    Good cause has been shown for the entry of this Final Order.

    (b)    The Debtors need to obtain the DIP Financing and use Cash Collateral to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to repay or otherwise satisfy the ABL Roll Up Obligations and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

    (c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors are also unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2) and 364(c)(3) for the purposes set forth in the DIP Credit Agreements without the Debtors (i) granting to the DIP Agents and the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined

below) under the terms and conditions set forth in this Final Order and in the DIP Documents and (ii) using Cash Collateral consisting of ABL Priority Collateral coming into the possession or control of the Debtors and, upon entry of this Final Order, proceeds of the ABL DIP Facility to pay or otherwise satisfy any remaining ABL Roll Up Obligations.

(d)     The terms of the DIP Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Financing has been negotiated in good faith and at arms' length among the Debtors, the DIP Agents and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Financing and the DIP Documents, including without limitation, all loans and Letters of Credit (as defined in the ABL DIP Facility), the Bayside DIP Facility, the use of Cash Collateral consisting of ABL Priority Collateral coming into the possession or control of the Debtors and, upon entry of this Final Order, proceeds of the ABL DIP Facility to pay or otherwise satisfy any remaining ABL Roll Up Obligations, and the balance of the ABL DIP Facility made to and all guarantees issued by the Debtors pursuant to the DIP Documents, and any other obligations under the DIP Documents (including, with respect to the ABL DIP Facility, all Bank Product Obligations) (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their affiliates in good faith, as that term is used in Bankruptcy Code section 364(e), and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Obligations, the DIP Liens and the Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

01:13365635.1

(f)      Consummation of the DIP Financing and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Documents is in the best interests of the Debtors' estates.

6.      ***Authorization of the DIP Financing and the DIP Credit Agreements***.

(a)      The Debtors were by the Interim Order and hereby are authorized to execute and enter into the DIP Documents, including that certain Senior Secured Super Priority Debtor-in-Possession Credit Agreement, dated as of January 31, 2013 (as may be amended, supplemented or modified from time to time, the "Bayside DIP Credit Agreement") and the ABL DIP Credit Agreement, and the DIP Credit Agreements and other DIP Documents are hereby approved. The DIP Credit Agreements and this Final Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders; *provided* that in the event of a conflict between the DIP Credit Agreements and this Final Order, this Final Order shall control.

(b)      The Borrowers were by the Interim Order and hereby are authorized to borrow money pursuant to the DIP Credit Agreements, and the Borrowers and the Guarantors were by the Interim Order and are hereby authorized to guaranty such borrowings, in accordance with the terms of this Final Order and the DIP Credit Agreements (and subject to the Approved Budget provided for under the Bayside DIP Credit Agreement and the ABL DIP Credit Agreement) to, among other things, (x) provide working capital for the Borrowers and the Guarantors (including, without limitation, foreign affiliates guaranteeing the DIP Obligations) and (y) pay interest, fees and expenses in accordance with this Final Order and the DIP Documents (including, for the avoidance of doubt, the fees and expenses of the DIP Lenders' professionals, whether incurred pre- or postpetition). In addition, subject to the rights of parties set forth in

01:13365635.1

14

paragraph 23 herein, Cash Collateral consisting of ABL Priority Collateral and proceeds thereof coming into the possession or control of the Debtors and, upon entry of this Final Order, proceeds of the ABL DIP Facility, may be used to pay or otherwise satisfy any remaining ABL Roll Up Obligations.  The Debtors are also authorized to incur Bank Product Obligations pursuant to the terms of the ABL DIP Facility, including overdrafts and related liabilities arising from treasury, depository and cash management services including any automated clearing house fund transfers provided to or for the benefit of the Debtors by the ABL DIP Agent or any of its affiliates, *provided, however*, that nothing herein shall require the ABL DIP Agent or any other party to incur overdrafts or to provide any such services or functions to the Debtors. Notwithstanding the foregoing, the ABL DIP Agent, with the consent of the Co-Collateral Agents (as defined in the ABL DIP Credit Agreement), may authorize the Debtors to use Cash Collateral consisting of ABL Priority Collateral, in lieu of incurring additional Obligations (as defined in the ABL DIP Credit Agreement), to fund expenses set forth in the Approved Budget, subject to the terms and conditions of this Order.  The Debtors shall not (A) use the proceeds of the ABL DIP Facility or any proceeds of the ABL Priority Collateral to (i) repay or prepay any of the Prepetition Term Loan Debt or the Bayside DIP Facility, (ii) pay any Taxes (as defined in the ABL DIP Credit Agreement) upon or as a result of the Disposition (as defined in the DIP Intercreditor Agreement) of Term Loan Priority Collateral or (iii) affirmatively commence or support, or to pay any professional fees incurred in connection with, any adversary proceeding, motion or other action that seeks to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of the liens, claims or rights in favor of the DIP Agents, any DIP Lender, the Prepetition Agents or any Prepetition Lender; or (B) use the proceeds of the Bayside DIP Facility or any proceeds of the Term Loan Priority Collateral to (x) repay or prepay

01:13365635.1

any of the Prepetition ABL Debt or the ABL Roll Up Obligations, (y) pay any Taxes (as defined in the Bayside DIP Credit Agreement) upon or as a result of the Disposition of the ABL Priority Collateral or (z) affirmatively commence or support, or to pay any professional fees incurred in connection with, any adversary proceeding, motion or other action that seeks to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of the liens, claims or rights in favor of the DIP Agents, any DIP Lender, the Prepetition Agents or any Prepetition Lender.

(c)     In furtherance of the foregoing and without further approval of this Court, each Debtor was by the Interim Order and hereby is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Financing, including, without limitation:

(i)     the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Credit Agreements, any security and pledge agreements, any mortgages contemplated thereby and the letter agreements referred to in clause (iii) below;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents for, among other things, the purpose of (A) with respect to the Bayside DIP Facility, adding additional financial institutions as Bayside DIP Lenders and reallocating the commitments for the Bayside DIP Facility among the Bayside DIP Lenders, in each case in such form as the Debtors and the

01:13365635.1

Bayside DIP Agent may agree; and (B) with respect to the ABL DIP Facility, adding additional financial institutions as ABL DIP Lenders and reallocating the commitments for the ABL DIP Facility among the ABL DIP Lenders, in each case in such form as the Debtors and the ABL DIP Agent may agree; *provided that* no further approval of the Bankruptcy Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (or any non-material fees paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the commitments, the rate of interest or the letter of credit fees payable thereunder; *provided, however,* that the Debtors shall provide notice of any modification or amendment to the DIP Credit Agreements to counsel to the Creditors' Committee, counsel to each of the Prepetition Agents and the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to any material modification or amendment. If the Creditors' Committee, the U.S. Trustee or the Prepetition Agents timely objects to any such material modification or amendment to the DIP Credit Agreements, such modification or amendment shall only be permitted pursuant to an order of this Court;

(iii)      the non-refundable payment: (A) solely from proceeds of the Bayside DIP Facility or Term Loan Priority Collateral, to the Bayside DIP Agent or Bayside DIP Lenders, as the case may be, of the fees referred to in the Bayside DIP Credit Agreement (and in the separate letter agreement(s) between them in connection with the Bayside DIP Facility), but excluding the Commitment Termination Fee (as defined in the Bayside DIP Credit Agreement,

to the extent referenced therein), and the reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in connection with the Bayside DIP Credit Agreement (including, for the avoidance of doubt, all such fees and expenses incurred prior to the Petition Date); and (B) solely from proceeds of the ABL DIP Facility or ABL Priority Collateral, to the ABL DIP Agent or ABL DIP Lenders, as the case may be, of the fees referred to in the ABL DIP Credit Agreement (as amended by ABL Amendment No. 1)[6] (and in the separate letter agreement(s) between them in connection with the ABL DIP Facility), and the reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in connection with the ABL DIP Credit Agreement;

(iv)      the conversion of the Prepetition ABL Debt and other satisfaction in full of the ABL Roll Up Obligations; and

(v)      the performance of all other acts required under or in connection with the DIP Documents.

(d)      The DIP Credit Agreements and the other DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any Case.  No obligation, payment, transfer or grant of security under the DIP Credit Agreements, the other DIP Documents or this

---

[6]      Attached hereto as Exhibit B.

01:13365635.1

Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Bankruptcy Code sections 502(d), 548 or 549 or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim; *provided, however*, that in the event of a final order sustaining a timely challenge under paragraph 23 hereof that the repayment or deemed satisfaction of the ABL Roll Up Obligations pursuant to the ABL DIP Facility resulted in the repayment or satisfaction of unsecured claims against the Debtors, then the repayment or other satisfaction shall be reversed, the ABL Roll Up Obligations shall be reinstated, and the accompanying obligations under the ABL DIP Facility shall be reduced or otherwise rescinded, on a dollar-for-dollar basis (including the reduction of revolving commitments thereunder).

7.      ***Payment of the Prepetition ABL Debt.***  The Debtors are hereby authorized, upon entry of this Final DIP Order, to use the proceeds of the ABL DIP Facility to fully repay or deem issued or incurred under the ABL DIP Facility any remaining ABL Roll Up Obligations.  All such application of proceeds of the ABL DIP Facility shall be final subject only to the right of parties in interest to seek a determination in accordance with paragraph 23 hereof that such applications to the ABL Roll Up Obligations resulted in a payment of an unsecured prepetition claim of Prepetition ABL Lenders.

8.      ***Superpriority Claims.***  Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed senior administrative expense claims against each of the Debtors (the "Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any

kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b), and which shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, including, without limitation, all Avoidance Actions (as defined below), subject only to the payment of the Carve-Out to the extent specifically provided for herein and to the terms of the DIP Intercreditor Agreement. The Superpriority Claims granted hereunder and under the Interim Order to the Bayside DIP Lenders shall be *pari passu* with the Superpriority Claims granted hereunder and under the Interim Order to the ABL DIP Lenders.

9.       ***Carve-Out***.  The "Carve-Out" means an amount sufficient to satisfy (a) all fees and expenses required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to 28 U.S.C. §§ 156(c) and 1930(a)(6) and (b) (i) unpaid allowed fees, expenses, and disbursements of the professionals for the Debtors and the Creditors' Committee (collectively, the "Professionals") incurred and accruing after the occurrence and during the continuance of an Event of Default (as such term is defined in the ABL DIP Credit Agreement or the Bayside DIP Credit Agreement) and delivery of a written notification by the ABL DIP Agent to the Bayside DIP Agent, the Prepetition Term Agent, and the Bondholder DIP Agent (defined below) or by the Bayside DIP Agent to the Prepetition ABL Agent and the ABL DIP Agent, of the occurrence of such Event of Default (as such term is defined in the ABL DIP Credit Agreement or Bayside

DIP Credit Agreement) for purposes of this paragraph 9 (the "Carve-Out Notice"), in an aggregate amount not in excess of $500,000 and (ii) unpaid Professionals' fees and expenses incurred and accruing prior to the delivery of a Carve-Out Notice and as allowed by the Bankruptcy Court and in such amounts (subject to any permitted variance under the ABL DIP Credit Agreement and the Bayside DIP Credit Agreement) not in excess of the permitted line items for such amounts and for such periods as set forth in the Approved Budgets set forth in the DIP Credit Agreements and Carve-Out Report (as defined below) (clauses (i) and (ii), collectively, the "Professionals' Carve-Out"); *provided that* (x) the dollar limitation in this clause (b) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the delivery of a Carve-Out Notice in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities or other amounts paid to any Prepetition Agent or Prepetition Secured Lender and (y) nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i) and (ii) above. Except as otherwise provided herein, as among the DIP Collateral (as defined below), the Professionals' Carve-Out, if and to the extent invoked pursuant to this Final Order, shall be allocated one-half against and funded from the ABL Priority Collateral and one-half against and funded from the Term Loan Priority Collateral. Notwithstanding anything herein to the contrary, no (i) amounts payable in connection with the $5.2 million wind-down budget as set forth in the Approved Budget, other than on account of Professional services rendered prior to the delivery of a Carve-Out Notice, or (ii) "success fee" or similar fee, whether or not set forth in the Approved Budget, may be paid with proceeds of any loan or other advance under the ABL DIP Credit Agreement or the ABL Priority Collateral.[7]

---

[7] To the extent the Bayside DIP Facility is not refinanced, the Employee Costs as set forth in the

10.    *Reservation of Rights Regarding Professionals' Fees.*  Nothing herein shall be construed as consent by the DIP Agents to the allowance of any fees or expenses of the Professionals or shall affect the right of each DIP Agent to object to the allowance and payment of such fees, costs or expenses, or the right of the DIP Agents to the return of any portion of the Carve-Out that is funded under its respective DIP Documents with respect to fees and expenses for a Professional that are approved on an interim basis but are later denied on a final basis.

11.    *The Carve-Out Report, Budget Periods and Variance Tests.*

(a)    The Debtors and their Chief Restructuring Officer (as defined in the ABL DIP Credit Agreement) shall provide to the DIP Agents and the Creditors' Committee a written report (the "Carve-Out Report") every two weeks disclosing their then-current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Professionals through the date of the Carve-Out Report and (2) projected fees, costs and expenses of the Professionals for the 30-day period following the date of such Carve-Out Report, taking into account projected interim payments during such period.

(b)    Section 6.15 (c) and (d) of the ABL DIP Credit Agreement and Section 6.31(c) and (d) of the Bayside DIP Credit Agreement will not restrict (a) any amounts otherwise chargeable under the DIP Credit Agreements for fees, costs and other charges incurred by the DIP Agent and DIP Lenders thereunder and (b) any disbursements to professionals to be paid in a particular Approved Budget period (the "Original Budget Period") but not paid during such period due to the delay in the approval of such professional fees by the Bankruptcy Court. Such approved but unpaid amounts may be paid in a subsequent Approved Budget period (the "Subsequent Budget Period") in which such Bankruptcy Court approval is received to the extent

---

wind-down budget shall be subject to the Bayside DIP Lenders' consent.

01:13365635.1

such payments are otherwise permitted pursuant to paragraph 9(b)(ii) of this Final Order, the ABL DIP Credit Agreement and the Bayside DIP Credit Agreement, in which case the applicable line item in the Approved Budget shall be deemed to be increased to reflect the disbursement of such amounts in such Subsequent Budget Period; *provided that* for purposes of the Variance Test (as defined in the DIP Credit Agreements), unless the Original Budget Period and the Subsequent Budget Period are in the same budget test period, such amounts shall be deemed to have been paid in each of the Original Budget Period and the Subsequent Budget Period (for the avoidance of doubt, the Debtors must be in compliance with the Variance Test for each of the Original Budget Period and the Subsequent Budget Period as if such payments were made in each such period).

(c) Notwithstanding anything in the ABL DIP Credit Agreement or the Bayside DIP Credit Agreement to the contrary, disbursements with respect to the Lender Group Expenses (as defined in the ABL DIP Credit Agreement) or the Agent Expenses (as defined in the Bayside DIP Credit Agreement) included in the line item "Restructuring/Other Profess. Fees" in the Approved Budget paid in excess of the amounts reflected in such Approved Budget shall not constitute a Default or Event of Default under either such agreement; *provided, however* that such excess amounts shall be disregarded for purposes of determining compliance with the Variance Test.

12. ***DIP Liens***. As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by any DIP Agent or DIP Lender of or over any DIP Collateral, the following security interests and liens were by the

Interim Order and hereby are granted by the Debtors to the DIP Agents for their own benefit and

the respective benefit of the applicable DIP Lenders (all property identified in clauses (a), (b) and

(c) below being collectively referred to as the "DIP Collateral"), subject, only in the event of the

occurrence and during the continuance of an Event of Default (as defined in the ABL DIP Credit

Agreement or the Bayside DIP Credit Agreement), to the payment of the Carve-Out (all such

liens and security interests granted to the DIP Agents, for their own benefit and the respective

benefit of the applicable DIP Lenders, pursuant to the Interim Order, this Final Order and the

DIP Documents, the "DIP Liens"):

     (a)    *First Lien on Unencumbered Property.*  Subject to the terms of the Intercreditor

Agreements, pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing,

enforceable, fully perfected first priority senior security interest in and lien upon all pre- and

postpetition property of the Debtors or their estates, whether existing on the Petition Date or

thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-

avoidable liens (collectively, "Unencumbered Property"), including, without limitation, any such

unencumbered cash of the Debtors (whether maintained with a DIP Agent or otherwise) and any

investment of such cash, inventory, accounts receivable, other rights to payment whether arising

before or after the Petition Date, contracts, properties, plants, equipment, general intangibles,

documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks,

trade names, other intellectual property, commercial tort claims, equity interests, and the

proceeds of all the foregoing.  Unencumbered Property shall also include the Debtors' claims

and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550, and

553 and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and

property received thereby whether by judgment, settlement or otherwise (collectively, "Avoidance Actions").

(b)     *Liens Priming Prepetition Secured Parties' Liens.*  Except as otherwise set forth in paragraph 13 herein, pursuant to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, fully perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of the Debtors (including, without limitation, Cash Collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to any existing lien presently securing the Prepetition Debt (including in respect of issued but undrawn letters of credit).  The liens on (i) the ABL Priority Collateral securing the ABL Priority Debt (as defined in the DIP Intercreditor Agreement) shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current or future liens of the Prepetition Secured Parties (including, without limitation, adequate protection liens granted hereunder and under the Interim Order) and (ii) the Term Loan Priority Collateral securing the Term Loan Priority Debt (as defined in the DIP Intercreditor Agreement) shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current or future liens of the Prepetition Secured Parties (including, without limitation, adequate protection liens granted hereunder and under the Interim Order).  The security interests and liens on the DIP Collateral securing the Bayside DIP Facility and the ABL DIP Facility shall be junior to any valid, perfected, enforceable and unavoidable security interests and liens of parties other than the Prepetition

01:13365635.1

Secured Parties, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Secured Parties may become subject subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b).

(c)     *Liens Junior to Certain Other Liens.*  Except as otherwise set forth in paragraph 13 herein, pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all pre- and postpetition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 12, as to which the liens and security interests in favor of the DIP Agents will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), which security interests and liens in favor of the DIP Agents are junior to such valid, perfected and unavoidable liens; *provided that*, the Bayside DIP Liens and Wells DIP Liens shall be subject to any asserted tax liens solely to the extent that such tax liens (1) had priority under applicable law over the prepetition liens granted to the Prepetition Secured Parties, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date; *provided, further that* the Bayside DIP Liens and Wells DIP Liens shall not be deemed to have priority over any valid, enforceable, non-avoidable right of setoff in favor of American Art Clay Co., Inc., Acco Brands USA LLC, Mead Products LLC, 3M Company and Dixon Ticonderoga (collectively, the "Objecting Vendor Parties") arising under Bankruptcy Code section 553 solely to the extent that (1) such right of setoff constitutes a "lien" within the

meaning of such term as used in Bankruptcy Code section 364(c)(3) and (2) the prepetition liens granted to the Prepetition Secured Parties were otherwise subject to such right of setoff in accordance with applicable law. Subject to any further order of Bankruptcy Court and notwithstanding anything to the contrary contained herein, for purposes of this Final Order, no liens or other rights or interests granted or permitted under this Final Order shall impair, be senior to, or in any way prime the liens and right of setoff (provided that such lien and right of setoff otherwise qualifies as a lien not being primed by reason of the last sentence of paragraph 12(b) of this Final Order) of Comerica Bank under that certain Pledge and Security Agreement (re: deposit account) dated May 2012 by School Specialty, Inc. in favor of Comerica Bank pledging the funds in Business Money Market Account No. 1852879814 in the name of School Specialty, Inc., maintained at Comerica Bank (the "Comerica Account") and all identifiable proceeds of the Comerica Account, which total $1,458,537.10 as of the Petition Date, plus postpetition interest accruing on the Comerica Account, which funds shall continue to secure the reimbursement obligations of School Specialty, Inc. to Comerica Bank under the Letter of Credit Applications and Reimbursement Agreements, or otherwise, for any draws under Comerica Bank letter of credit no. 5183 in the amount of $700,000, issued for the benefit of DEI CSEP or Comerica Bank letter of credit no. 5184 in the amount of $755,000, issued for the benefit of Travelers Insurance Company. Nothing in this order shall alter or affect any right, claim or defense of any of the Objecting Vendor Parties based upon reclamation, setoff or recoupment, if any; provided, however, that (a) the ABL DIP Agent and ABL DIP Lenders shall be deemed to have the rights of the holder of a security interest under Bankruptcy Code section 546(c); (b) the ABL DIP Agent and ABL DIP Lenders, as the holder of a security interest under 546(c), shall have the same rights against goods subject to the Objecting Vendor Parties' claims as do the

Prepetition ABL Agent and Prepetition ABL Lenders as of the Petition Date; (c) the ABL DIP
Lenders reserve all rights to object to any reclamation, setoff or recoupment claims; and (d) this
Order constitutes notice of the security interest of the ABL DIP Agent and ABL DIP Lenders to
each account Debtor for purposes of applicable non-bankruptcy law regarding postpetition setoff
rights.

(d)  *Liens Senior to Certain Other Liens.*  The DIP Liens and the Adequate Protection
Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that
is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code
section 551, (ii) any liens arising after the Petition Date including, without limitation, any liens
or security interests granted in favor of any federal, state, municipal or other governmental unit,
commission, board or court for any liability of the Debtors to the extent permitted by applicable
non-bankruptcy law or (iii) any intercompany or affiliate liens of the Debtors.

13.  ***Priority of DIP Liens.***  Notwithstanding anything to the contrary herein, (a) the
DIP Liens granted hereunder and under the Interim Order to the Bayside DIP Lenders (the
"Bayside DIP Liens") shall be immediately junior in priority and subject to the DIP Liens
granted to the ABL DIP Lenders and to the prepetition liens granted to the Prepetition ABL
Agent in respect of the ABL Priority Collateral and (b) the DIP Liens granted hereunder and
under the Interim Order to the ABL DIP Lenders (the "Wells DIP Liens") shall be immediately
junior in priority and subject to the Bayside DIP Liens and to the prepetition liens granted to the
Prepetition Term Loan Agent in respect of the Term Loan Priority Collateral; *provided that,*
subject to entry of a final order in favor of a plaintiff sustaining a Lender Claim brought pursuant
to paragraph 23 of this Final Order, (i) if any Prepetition ABL Lender is required to turn over,
disgorge or otherwise pay to the Debtors' estates any amount paid in respect of the Prepetition

01:13365635.1

28

ABL Debt, then the Prepetition ABL Lenders shall be entitled to a reinstatement of Prepetition ABL Debt with respect to all such amounts and (ii) if any Prepetition Term Loan Lender is required to turn over, disgorge or otherwise pay to the Debtors' estates any amount paid in respect of the Prepetition Term Loan Debt, then the Prepetition Term Loan Lenders shall be entitled to a reinstatement of Prepetition Term Loan Debt with respect to all such amounts. The ABL Priority Collateral shall include the proceeds of the Avoidance Actions described in subclause (i) above, and the Wells DIP Liens granted hereunder and under the Interim Order in respect of such Avoidance Actions shall be senior to the Bayside DIP Liens granted hereunder and under the Interim Order; the Term Loan Priority Collateral shall include the proceeds of the Avoidance Actions described in subclause (ii) above, and the Bayside DIP Liens granted hereunder and under the Interim Order in respect of such Avoidance Actions shall be senior to the Wells DIP Liens granted hereunder and under the Interim Order; and the DIP Liens granted hereunder in respect of the proceeds of all Avoidance Actions not covered by subclauses (i) or (ii) above shall rank *pari passu* as between the DIP Agents.

14.    ***Protection of DIP Lenders' Rights.***

(a)    All DIP Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under the DIP Documents or this Final Order.

(b)    Subject to the terms of the DIP Intercreditor Agreement, so long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are outstanding) outstanding under the DIP Documents, (1) the Prepetition Term Loan Agent and Prepetition Term Loan Lenders shall (i) take no action to foreclose upon or recover in

01:13365635.1

connection with the liens granted thereto pursuant to the Prepetition Loan Documents, the Interim Order or this Final Order, or otherwise exercise remedies against any ABL Priority Collateral, except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any release of ABL Priority Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the ABL Priority Collateral unless, solely as to this clause (iii), the ABL DIP Agent or ABL DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the Interim Order or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (2) the Prepetition ABL Agent and Prepetition ABL Lenders shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents, the Interim Order or this Final Order, or otherwise exercise remedies against any Term Loan Priority Collateral, except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any release of Term Loan Priority Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Term Loan Priority Collateral unless, solely as to this clause (iii), the Bayside DIP Agent or Bayside DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the Interim Order or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(c)    The automatic stay provisions of Bankruptcy Code section 362 are vacated and modified to the extent necessary to permit the DIP Agents and the DIP Lenders to exercise (i) immediately upon the occurrence of an Event of Default (as defined in the ABL DIP Credit Agreement or the Bayside DIP Credit Agreement), all rights and remedies under the applicable DIP Documents other than those rights and remedies against the DIP Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of an Event of Default (as defined in the ABL DIP Credit Agreement or the Bayside DIP Credit Agreement) and the giving of five business days' prior written notice to the Debtors (with a copy to counsel to the Creditors' Committee, the Bondholder DIP Agent (defined below), and to the U.S. Trustee) to the extent provided for in any DIP Document, all rights and remedies against the DIP Collateral provided for in any DIP Document (including, without limitation, the right to set off against accounts maintained by the Debtors with any DIP Agent or DIP Lender or any affiliate thereof). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default (as defined in the ABL DIP Credit Agreement or the Bayside DIP Credit Agreement) has occurred and is continuing, and the Debtors and the Prepetition Secured Parties hereby each waive their right to seek relief, including, without limitation, under Bankruptcy Code section 105, to the extent such relief would in any way impair or restrict the rights and remedies of either DIP Agent or the DIP Lenders set forth in this Final Order or the DIP Documents.  In no event shall the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The delay or failure to exercise rights and remedies under the applicable DIP Documents or this Final Order by any of the DIP Agents or DIP Lenders shall not constitute a waiver of such DIP

Agent's or such DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

15.    *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Priority Collateral or the Cash Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a) or any similar principle of law without the prior written consent of the DIP Agents or the Prepetition Agents, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders.

16.    *Cash Collateral*.  Pending repayment in full of any outstanding ABL Roll Up Obligations, upon entry of this Final Order, all Cash Collateral consisting of ABL Priority Collateral shall be remitted to the Prepetition ABL Agent to be applied to repay outstanding ABL Roll Up Obligations.  With the exception of any funds in a blocked account pursuant to the Prepetition ABL Documents, to the extent any funds of the Debtors were on deposit with any Prepetition Secured Party as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Prepetition Secured Party immediately prior to the filing of the Debtors' chapter 11 petitions (regardless of whether, as of the time of filing, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff, except as otherwise set forth in the DIP Intercreditor Agreement.  By virtue of such setoff rights, the Deposited

Funds are subject to a lien in favor of such Prepetition Secured Party, giving rise to a secured claim pursuant to Bankruptcy Code sections 506(a) and 553. The Prepetition Secured Parties are obligated, to the extent provided in the Prepetition Loan Documents and subject to the terms of the DIP Intercreditor Agreement, as the case may be, to share the benefit of such liens and setoff rights with the other Prepetition Secured Parties that are party to or are otherwise beneficiaries of such documents. Pursuant to Bankruptcy Code section 552, any proceeds of the Prepetition Priority Collateral of the Prepetition Secured Parties (including, without limitation, the Deposited Funds or any other funds on deposit at the Prepetition Secured Parties or at any other institution as of the Petition Date) are Cash Collateral of the applicable Prepetition Secured Parties within the meaning of Bankruptcy Code section 363(a). The Deposited Funds, all cash proceeds of the Prepetition Priority Collateral of the Prepetition Secured Parties and all other cash collateral (as defined in the Bankruptcy Code) of the Prepetition Secured Parties constitutes "Cash Collateral" hereunder.

17.    *Use of Cash Collateral*.  Except on the terms and conditions of this Final Order and the Intercreditor Agreements, the Debtors shall be enjoined and prohibited from using the Cash Collateral absent further order of this Court. The Debtors' right to use Cash Collateral, and the Prepetition Secured Parties' consent to use of Cash Collateral, shall terminate automatically on the Maturity Date (as defined in the ABL DIP Credit Agreement or the Bayside DIP Credit Agreement, as applicable).

18.    *Adequate Protection*.  Subject to the terms of the Intercreditor Agreements, the Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(e) and 364(d)(1), to adequate protection of their interests in their respective Prepetition Priority Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in

01:13365635.1

the value of the Prepetition Secured Parties' interest in the Prepetition Priority Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Priority Collateral, the priming of the Prepetition Secured Parties' security interests and liens in the Prepetition Priority Collateral by the DIP Agents and the DIP Lenders pursuant to the DIP Documents, the Interim Order and this Final Order, and the imposition of the automatic stay pursuant to Bankruptcy Code section 362. As adequate protection, the Prepetition Secured Parties were by the Interim Order and hereby are granted the following (collectively, the "Adequate Protection Obligations") (subject to recharacterization and/or disgorgement from the applicable Prepetition Secured Party solely to the extent that the Bankruptcy Court determines at a later date that the applicable Prepetition Secured Party was not entitled to the adequate protection completed hereby):[8]

(a)    *Adequate Protection Liens.* Subject to the terms of the DIP Intercreditor Agreement, the Prepetition Agents (for themselves and for the respective benefit of the applicable Prepetition Secured Lenders) were by the Interim Order and hereby are granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all DIP Collateral, subject and subordinate only to (i) the DIP Liens and any liens on the DIP Collateral that are senior to, or *pari passu* with, the DIP Liens and (ii) the Carve-Out (the "Adequate Protection Liens"). The Adequate Protection Liens granted hereunder and under the Interim

---

[8]    Upon entry of the Ad Hoc Interim DIP Order and the subsequent repayment of all amounts contemplated thereunder to Bayside, the adequate protection granted to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders under this Final Order shall be of no further force and effect, and all continuing rights and remedies of Bayside shall be as set forth in the Ad Hoc Interim DIP Order.

01:13365635.1

Order to the Prepetition Secured Parties shall rank as follows: (i) the Adequate Protection Liens granted hereunder to the Prepetition ABL Agent shall be immediately junior in priority and subject to the Adequate Protection Liens granted hereunder to the Prepetition Term Loan Agent in respect of the Term Loan Priority Collateral and (ii) the Adequate Protection Liens granted hereunder to the Prepetition Term Loan Agent shall be immediately junior in priority and subject to the Adequate Protection Liens granted to the Prepetition ABL Agent in respect of the ABL Priority Collateral.

(b)    *Section 507(b) Claims*. Subject to the terms of the DIP Intercreditor Agreement, the Prepetition Agents (for themselves and for the respective benefit of the applicable Prepetition Secured Lenders) were by the Interim Order and hereby are granted, subject to the payment of the Carve-Out, allowed superpriority claims as provided for in Bankruptcy Code section 507(b), immediately junior to the claims under Bankruptcy Code section 364(c)(1) held by the DIP Agents and the DIP Lenders; *provided however* that none of the Prepetition Secured Parties shall receive or retain any payments, property or other amounts in respect of the superpriority claims under Bankruptcy Code section 507(b) granted hereunder or under the Interim Order or under the Prepetition Loan Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full or as otherwise agreed by the DIP Lenders or as provided in the DIP Documents. The superpriority claims granted hereunder and under the Interim Order to the Prepetition Secured Parties shall rank *pari passu* as between the Prepetition Agents.

(c)    *Payment of Interest*. Subject to the limitations regarding the use of proceeds and DIP Collateral as set forth in the ABL DIP Credit Agreement and the Bayside DIP Credit Agreement and otherwise subject to the terms of the Intercreditor Agreements, the Prepetition Agents, for the benefit of the Prepetition Secured Lenders, shall receive the immediate cash

payment of all accrued and unpaid prepetition interest, if any, at the rates provided for in the applicable Prepetition Loan Documents and all other accrued and unpaid fees and disbursements, if any, owing to the Prepetition Secured Lenders or Prepetition Agents, as applicable, under the applicable Prepetition Loan Documents incurred prior to the Petition Date and the current cash payment of all interest accruing after the Petition Date at the rates provided for in the applicable Prepetition Loan Documents except in respect of the Early Payment Fee, as defined in the Prepetition Term Loan Credit Agreement.

(d) *Fees and Expenses*. The Prepetition Agents and the Prepetition Secured Lenders shall receive from the Debtors current cash payments of all fees and expenses payable to the Prepetition Agents or the Prepetition Secured Lenders, as applicable, under the Prepetition Loan Documents, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants for the Prepetition Agents or Prepetition Secured Lenders promptly upon receipt of invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications, including such amounts arising before and after the Petition Date; *provided, however*, that the Prepetition Agents and the Prepetition Secured Lenders shall submit copies of their respective professional fee invoices for postpetition fees and expenses to the Debtors, and the Debtors shall send copies of such invoices to the U.S. Trustee and the Creditors' Committee within two (2) business days from receipt thereof, and the U.S. Trustee and the Creditors' Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the U.S. Trustee or the Creditors' Committee so objects to any such invoices, the Debtors shall remit payment on account of the portion of such invoices to which there has been no objection, and payment of the allegedly unreasonable portion of such invoices will be subject to review by

the Bankruptcy Court; *provided, further, however,* if applicable, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. Notwithstanding anything in the foregoing to the contrary, all fees and expenses payable to (i) the Bayside DIP Agent, the Bayside DIP Lenders, the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders shall be paid solely from the proceeds of Term Priority Collateral and the Bayside DIP Facility and (ii) the ABL DIP Agent, the ABL DIP Lenders, the Prepetition ABL Agent or the Prepetition ABL Lenders shall be paid solely from the proceeds of ABL Priority Collateral and the ABL DIP Facility. The Bayside DIP Agent and the ABL DIP Agent may charge the applicable loan accounts to pay for such fees and expenses.

(e)    ***Monitoring of Collateral***.  Each of the Prepetition Agents shall be permitted to retain separate expert consultants and financial advisors at the expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the Debtors' businesses and the value of the DIP Collateral. Notwithstanding anything in the foregoing to the contrary, all reasonable and documented expenses, as provided for in the Prepetition Loan Documents, as applicable, relating to (i) any consultants or financial advisors retained by the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders shall be paid solely from the proceeds of Term Loan Priority Collateral and the Bayside DIP Facility and (ii) any consultants or financial advisors retained by the Prepetition ABL Agent or the Prepetition ABL Lenders shall be paid solely from the proceeds of ABL Priority Collateral and the ABL DIP Facility.

(f)    *Financial Reporting*.  The Debtors shall provide the Prepetition Agents and the Creditors' Committee with financial and other reporting as described in the DIP Documents.

19.    *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Bankruptcy Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  However, each Prepetition Agent may request further or different adequate protection, and the Debtors or any other party may contest any such request; *provided* that, except as otherwise provided in the DIP Intercreditor Agreement, any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agents and the DIP Lenders granted under the Interim Order, this Final Order and the DIP Documents. Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Prepetition Secured Party, DIP Agent or DIP Lender, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).

20.    *Perfection of DIP Liens and Adequate Protection Liens*.

(a)    Subject to the provisions of paragraph 12(b) above, the Debtors, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any

01:13365635.1

other action in order to validate and perfect the liens and security interests granted to them hereunder or in the Interim Order. Whether or not the DIP Agents on behalf of the DIP Lenders or the Prepetition Agents on behalf of the Prepetition Secured Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder or under the Interim Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order. Upon the request of either DIP Agent, each of the Prepetition Secured Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Agents to further validate, perfect, preserve and enforce the DIP Liens. The Debtors shall execute and deliver to the DIP Agents and the Prepetition Agents all such agreements, financing statements, instruments and other documents as the DIP Agents and the Prepetition Agents may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c)     After notice to any affected landlord or other parties, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more

landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Documents or this Final Order.

21.    ***Preservation of Rights Granted Under the Interim Order and this Final Order.***

(a)    Subject to the terms of the DIP Intercreditor Agreement, no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Agents, the DIP Lenders or the Prepetition Secured Parties shall be granted or allowed until the occurrence of (i) the payment in full in cash or immediately available funds of all of the DIP Obligations, Prepetition Debt and Adequate Protection Obligations, (ii) the termination or expiration of all commitments to extend credit to Debtors, (iii) with respect to the ABL Roll Up Obligations and ABL DIP Facility, the termination of, or providing Cash Collateral in respect of all outstanding letters of credit and Bank Product Obligations that comprise a portion of the ABL Roll Up Obligations or ABL DIP Facility, as set forth in the Prepetition ABL Credit Agreement or ABL DIP Credit Agreement, respectively, and (iv) the cash collateralization in respect of any asserted or threatened claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which any Prepetition Secured Lender, any DIP Lender, Prepetition Agent or DIP Agent may be entitled to indemnification by any Debtor pursuant to the indemnification provisions in the Prepetition Loan Documents and Loan Documents (as defined

in the applicable DIP Credit Agreement), as applicable ("Paid in Full"). While any portion of the DIP Financing (or any refinancing thereof), the DIP Obligations or the Adequate Protection Obligations remain outstanding and the commitments thereunder have not been terminated, the DIP Liens and the Adequate Protection Liens shall not be (x) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise, except as may be provided in the DIP Intercreditor Agreement.

(b)    Unless all DIP Obligations shall have indefeasibly been Paid in Full (and, with respect to outstanding letters of credit issued and Bank Product Obligations pursuant to the ABL DIP Credit Agreement, cash collateralized in accordance with the provisions thereof) and the Adequate Protection Obligations shall have been indefeasibly paid in cash in full, the Debtors shall not use or seek to use any Cash Collateral, unless, in addition to the satisfaction of all requirements under Bankruptcy Code section 363, the DIP Agents and Co-Collateral Agents (as defined in the ABL DIP Credit Agreement) have consented to such order, and, with respect to Adequate Protection Obligations, the Prepetition Agents and Co-Collateral Agents (as defined in the Prepetition ABL Credit Agreement) have consented to such order.

(c)    If an order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agents and the DIP Lenders and, as applicable, the Prepetition Secured Parties pursuant to the Interim Order or this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final

Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in cash in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(d)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby, under the Interim Order, or pursuant to the DIP Documents with respect to any DIP Obligations, or the Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agents, the DIP Lenders or the Prepetition Secured Parties prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as applicable, of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e), this Final Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, the DIP Obligations and the Adequate Protection Obligations.

(e)    Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and the Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of the Interim Order or this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are Paid in Full.

22.    *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, proceeds of letters of credit, Cash Collateral, Prepetition Priority Collateral, DIP Collateral, portion of the proceeds of the DIP Financing or part of the Carve-Out may be used for any of the following (each, a "Lender Claim") without the prior written consent of the Prepetition Agents: (a) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability

of any amount due under the DIP Documents or the Prepetition Loan Documents, or the liens or claims granted under the Interim Order, this Final Order, the DIP Documents or the Prepetition Loan Documents, (b) to investigate or assert any claims, defenses or causes of action that may exist under law, equity or otherwise against the DIP Agents, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders, or their respective agents, affiliates, representatives, attorneys or advisors, (c) to prevent, hinder or otherwise delay the DIP Agents' assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents, the Interim Order or this Final Order, (d) to seek to modify any of the rights granted to the DIP Agents or the DIP Lenders hereunder, under the Interim Order or under the DIP Documents, in each of the foregoing cases without such applicable parties' prior written consent, or (e) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) in accordance with the DIP Credit Agreements.  Notwithstanding the foregoing, any party other than the Debtors may investigate claims and issues with respect to the Prepetition Loan Documents (the "Investigation") and, subject to Paragraph 23 and any applicable law with respect to standing, commence and prosecute any related proceedings as a representative of the Debtors' estates; *provided that* in the case of the Creditors' Committee, not more than $25,000 of DIP Collateral shall be used for such Investigation of the Prepetition Loan Documents.

23.    ***Effect of Stipulations on Third Parties***.

(a)    Each stipulation, admission and agreement contained in this Final Order, including, without limitation, in paragraph 4 of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes,

01:13365635.1

and the Debtors are deemed to have irrevocably waived and relinquished all Lender Claims as of the date of entry of the Interim Order. Each stipulation, admission and agreement contained in this Final Order, including, without limitation, in paragraph 4 of this Final Order, shall also be binding upon all other parties in interest, including, without limitation, the Creditors' Committee, under all circumstances and for all purposes, except solely with respect to a Bayside Lender Claim (defined below) or a Third Party ABL Lender Claim (as defined below) to the extent that (i) a party in interest has, subject to the limitations contained herein, including, *inter alia*, in paragraph 22, timely and properly filed an adversary proceeding asserting such a Lender Claim with respect to any of the stipulations or admissions set forth in paragraph 4 by no later than the earlier of the date that is (X) seventy-five (75) days after the Petition Date or (Y) solely with respect to any Bayside Lender Claim asserted by the Creditors' Committee, sixty (60) days (or such later date as has been agreed to, in writing, by the Prepetition Term Loan Agent in its sole discretion) after the appointment of the Creditors' Committee, and (ii) there is a final order in favor of the plaintiff sustaining such Lender Claim. No Lender Claim may be asserted by the Creditors' Committee, the Ad Hoc Committee[9] or any of the agents or lenders under the Bondholder DIP Credit Agreement, or the respective affiliates of the foregoing against Prepetition ABL Agent, ABL DIP Agent, Prepetition ABL Lenders, ABL DIP Lenders or relating to or arising from the Prepetition ABL Credit Agreement, Prepetition ABL Documents, ABL DIP Facility, ABL DIP Credit Agreement and any related DIP Documents, or any Collateral secured any ABL Debt (as defined under the Intercreditor Agreement), and only other parties in interest may assert such a Lender Claim if otherwise in accordance with this paragraph 23 of this Final Order (any such permitted Lender Claim being a "Third Party ABL Lender

---

[9]    As defined in the Supplemental Objection to the DIP Motion [Docket No. 202].

Claims"). Subject only to the foregoing, as of the Petition Date, the Prepetition ABL Agent and Prepetition ABL Lenders hold allowed secured claims in an amount not less than $43.296 million, not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law.  For purposes of this Paragraph 23(a), a "Bayside Lender Claim" means a Lender Claim against, arising from, related to or in connection with the Prepetition Term Loan Credit Agreement (including the Early Payment Fee and any interest with respect thereto or indemnification claims (including attorneys' fees) in connection therewith), Prepetition Term Loan Lenders, Prepetition Term Loan Agent, Prepetition Term Loan Documents, Prepetition Term Loan Debt and/or any property of any Debtor's estate securing such Prepetition Term Loan Debt (including any Term Loan Priority Collateral).  Neither entry of this Order as an order entered at the final hearing on the Motion, nor this Order becoming a final, non-appealable order, shall modify, impair or prejudice in any respect the right of any party in interest to commence or cause to be commenced a Bayside Lender Claim in the manner described above (including any objection, adversary proceeding or other challenge to the extent, validity and/or priority of the Early Payment Fee and any interest or indemnification claims related thereto).

(b)    The success of any particular Lender Claim shall not alter the binding effect on each party in interest of any stipulation or admission not subject to such Lender Claim.  Except to the extent (but only to the extent) a timely and properly filed adversary proceeding asserting a Lender Claim as provided for in clause (a) above is successful, (i) the Prepetition Debt shall constitute allowed claims, not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaims, defense or "claim" (as defined in the Bankruptcy Code) of any kind

pursuant to the Bankruptcy Code or other applicable law, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, (ii) the Prepetition Security Interests shall be deemed to have been, as of the Petition Date, legal, valid, binding perfected and enforceable liens and security interests not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaims, defense or "claim" (as defined in the Bankruptcy Code) of any kind, and (iii) the Prepetition Debt and the Prepetition Security Interests shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors).

(c)    Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Lender Claims with respect to the Prepetition Loan Documents or the Prepetition Debt.

(d)    Notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default (as defined in the Bayside DIP Credit Agreement or ABL DIP Credit Agreement) has occurred and is continuing, each DIP Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; *provided* that such DIP Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such DIP Agent, calculated on a per diem basis and any such amount paid shall be deemed to be DIP Obligations, as applicable.

24.    ***Collateral Agent.***

01:13365635.1

(a)    Subject to the terms of the Intercreditor Agreements, to the extent that the Prepetition Term Loan Agent is (a) the secured party under any account control agreements in connection with the Prepetition Term Loan Documents, (b) listed as loss payee under the Debtors' insurance policies in connection with the Prepetition Term Loan Documents, or (c) the secured party under any Prepetition Term Loan Document, so shall the Bayside DIP Agent (x) be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Term Loan Document, (y) have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and (z) act in that capacity and distribute any proceeds recovered or received first, for the benefit of the Bayside DIP Lenders in accordance with the Bayside DIP Credit Agreement and the DIP Intercreditor Agreement, and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Prepetition Term Loan Lenders.

(b)    To the extent that the Prepetition ABL Agent is (a) the secured party under any account control agreements in connection with the Prepetition ABL Documents, (b) listed as loss payee under the Debtors' insurance policies in connection with the Prepetition ABL Documents, or (c) the secured party under any Prepetition ABL Document, so shall the ABL DIP Agent (x) be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition ABL Document, (y) have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and (z) act in that capacity and distribute any proceeds recovered or received first, for the benefit of the ABL DIP Lenders in accordance with the ABL DIP Credit Agreement and the DIP Intercreditor Agreement, and second, subsequent to

01:13365635.1

indefeasible payment in full of all DIP Obligations, for the benefit of the Prepetition ABL Lenders, to the extent of any outstanding Prepetition ABL Debt.

(c)     Each Prepetition Agent shall serve as agent for the DIP Agents for purposes of perfecting their respective security interests in and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

25.     *Order Governs*.  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

26.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104 or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns, *provided, however*, that the DIP Agents, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether under the DIP Credit Agreements, promissory notes or otherwise) or permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this

Final Order or the DIP Documents, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute). Except as expressly set forth herein, this Final Order does not create any rights for the benefit of any third party, creditor, or equity holder, or any direct, indirect, or incidental beneficiary, other than the Bondholder DIP Agent and the lenders under the Bondholder DIP Credit Agreement (defined below).

27.    *No Impact on Certain Contracts or Transactions*.  No rights of any entity in connection with a contract or transaction of the kind listed in Bankruptcy Code sections 555, 556, 559, 560 or 561, whatever they might or might not be, are affected by the provisions of this Final Order.

28.    *Exclusions*.  Nothing herein or in any of the DIP Documents shall operate as a release or waiver of, or a limit on expenditures in pursuit of, any claims or causes of action held or assertable by any party (including, without limitation, any of the Debtors or any other party in interest) against any Debtor, any "affiliate" of any Debtor (as defined in the Bankruptcy Code) or any officer, director or direct or indirect shareholder (or affiliate thereof) of any Debtor.

29.    *Release*.  Upon the date that each applicable portion of the DIP Financing shall be Paid in Full and prior to the release of the applicable DIP Liens, Debtors shall execute and deliver to the applicable DIP Agent and DIP Lenders a general release of any and all claims and

01:13365635.1

causes of action that could have been asserted or raised under or in connection with the ABL DIP Facility or Bayside DIP Facility, as applicable.

30.    ***Effectiveness.***  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

31.    ***Refinancing of Certain Bayside Prepetition and Postpetition Financing.***  From and after the First Amendment Effective Date (as defined in the ABL Amendment No. 1), (a) each of the lenders under the Bondholder DIP Credit Agreement (as defined in ABL Amendment No. 1) with U.S Bank National Association, as Administrative Agent and as Collateral Agent thereunder (the "Bondholder DIP Agent"), shall be deemed a party to and bound by the terms and provisions of the DIP Intercreditor Agreement, as amended by this Order; (b) the Bondholder DIP Credit Agreement shall be deemed a Refinance of the Term Loan Debt under and in accordance with Section 5.3(b) of the DIP Intercreditor Agreement and the obligations under the Bondholder DIP Credit Agreement shall be deemed to be "Term Loan Debt" and the Replacement DIP Term Loan Agent shall be deemed to be the "Term Loan Agent," in each case, under and in accordance with Section 5.5(b) of the DIP Intercreditor Agreement; (c) references to the "Bayside DIP Credit Agreement" or any provisions thereof in Paragraph 9 of this Order shall refer to the Bayside DIP Credit Agreement and any Refinancing thereof (including the Bondholder DIP Credit Agreement); (d) reference to the Bayside DIP Liens shall include the liens granted in favor of the Bondholder DIP Agent, subject to the terms of the Intercreditor

01:13365635.1

51

Agreements and this Paragraph; (e) upon the occurrence of a Priority Collateral Event (as defined below), (i) the ABL Priority Collateral (as referred to herein and the Intercreditor Agreements) means all DIP Collateral for purposes of securing ABL Debt, until the commitments under the ABL DIP Credit Agreement have been terminated and the amount of ABL Debt outstanding as of the applicable date of each Disposition of such DIP Collateral is less than the ABL Debt outstanding or otherwise secured under the ABL DIP Credit Agreement or any other DIP Document on April 13, 2013 (the "Priority Collateral Event Amount") and (ii) the Term Loan Priority Collateral (as referred to herein and in the Intercreditor Agreements) shall be deemed modified accordingly to mean none of the Collateral until the commitments under the ABL DIP Credit Agreement have been terminated and the amount of ABL Debt is less than the Priority Collateral Event Amount, and thereafter the Term Loan Priority Collateral shall have the meaning immediately prior to the occurrence of the Priority Collateral Event. For purposes hereof, "Priority Collateral Event" means the first to occur of the following events: (w) acceleration of the ABL Debt or the Maturity Date (as defined in the ABL DIP Credit Agreement), (x) commencement of any auction authorized by the Court for, or entry of an order of this Court approving, any Disposition of all or any material portion of the DIP Collateral outside the ordinary course of any Debtor's business (other than a Disposition that results in Payment in Full of ABL Priority Debt on the effective date of such Disposition), (y) dismissal or conversion of any of the Chapter 11 Cases and (z) entry of an order of this Court confirming any plan in any of the Chapter 11 Cases. The foregoing provisions of this Paragraph shall be deemed to be permitted amendments to the DIP Intercreditor Agreements and, with respect to any Prepetition Term Loan Debt, the Prepetition Intercreditor Agreement. Other defined terms in

01:13365635.1

this Paragraph not otherwise defined in this Order have the meanings set forth in the DIP Intercreditor Agreement.

32.    *Conflict.*  In the event of any conflict between the terms of Paragraph 31 of this Order and any other order of this Court (including, without limitation, the order authorizing the Bondholder DIP Credit Agreement (as defined in ABL Amendment No. 1)), Paragraph 31 of this Order shall govern and control, and the terms of such Paragraph 31 shall not be amended or modified without the prior written consent of the Bondholder DIP Agent and the ABL DIP Agent.

33.    *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

Dated _____Feb 26_____, 2013
Wilmington, Delaware

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

01:13365635.1