IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SCHOOL SPECIALTY, INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 13-10125 (KJC)<br><br>Jointly Administered<br><br>**Related Docs. No. 1340, 1383** |

### REORGANIZED DEBTORS' (I) JOINDER TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER EITHER (A) COMPELLING BAYSIDE FINANCE, LLC TO ACCEPT THE ESCROWED PAYMENTS, OR , IN THE ALTERNATIVE, (B) ORDERING THE DISCONTINUATION OF THE PAYMENT OF DEFAULT INTEREST AND OTHER FEES AND EXPENSES INTO THE ESCROW ACCOUNT BY THE REORGANIZED DEBTORS AND (II) LIMITED RESPONSE TO THE OBJECTION OF BAYSIDE FINANCE, LLC TO THE MOTION

The reorganized Debtors (each a "Reorganized Debtor" and collectively, the "Reorganized Debtors"),[2] by and through their undersigned counsel, hereby file this joinder and limited response (the "Joinder and Limited Response") and (i) join in the relief requested in the *Motion of the Official Committee of Unsecured Creditors for an Order Either (A) Compelling Bayside Finance, LLC to Accept the Escrowed Payments, or, in the Alternative, (B) Ordering the Discontinuation of the Payment of Default Interest and Other Fees and Expenses into the Escrow Account by the Reorganized Debtors* [Docket No. 1340] (the "Motion")[3] and (ii) respond to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and state of incorporation, were: School Specialty, Inc. (Wisc.; 1239), Bird-In-Hand Woodworks, Inc. (N.J.; 8811), Califone International, Inc. (Del.; 3578), Childcraft Education Corp. (N.Y.; 9818), ClassroomDirect.com, LLC (Del.; 2425), Delta Education, LLC (Del.; 8764), Frey Scientific, Inc. (Del.; 3771), Premier Agendas, Inc. (Wash.; 1380), Sax Arts & Crafts, Inc. (Del.; 6436), and Sportime, LLC (Del.; 6939). The address of the Debtors' corporate headquarters is W6316 Design Drive, Greenville, Wisconsin 54942.

[2] Reorganized Debtors means the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date (as defined below) of the Plan (as defined below). Reference in this Motion to "Debtors" relates to the Reorganized Debtors prior to the occurrence of the Effective Date.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion and/or the Objection, as applicable.

certain of the statements set forth in the *Objection of Bayside Finance, LLC to Motion of the Official Committee of Unsecured Creditors for an Order Either (A) Compelling Bayside Finance, LLC to Accept the Escrowed Payments, or, in the Alternative, (B) Ordering the Discontinuation of the Payment of Default Interest and Other Fees and Expenses into the Escrow Account by the Reorganized Debtors* [Docket No. 1383] (the "Objection").  The Reorganized Debtors respectfully state as follows:

### JOINDER TO MOTION AND LIMITED RESPONSE TO OBJECTION

1. By this Joinder and Limited Response, the Reorganized Debtors join in the relief requested in the Motion.  The Reorganized Debtors have a substantial business justification for seeking to release the Escrowed Payments to Bayside (subject to disgorgement, as set forth below), and believe that resolution of the Motion is necessary to determine the obligation of Bayside to accept tender of such payments.

2. The Reorganized Debtors also wish to clarify certain misstatements made by Bayside in the Objection.  Specifically, while Bayside asserts that it has not "repeatedly and unjustifiably refused to accept tender of the Escrowed Funds," and it is aware of only one occasion on which the Debtors or the Reorganized Debtors contemplated making a conditional offer to release the funds (see, e.g., Objection, ¶¶ 8, 11), the fact is that the Reorganized Debtors attempted to release the Escrowed Payments to Bayside on a number of occasions, including unconditionally and without restrictions.  However, Bayside has thus far refused to accept the Escrowed Payments.

3. Indeed, had Bayside attached the entire email correspondence which followed the Hansen Email (the "Release of Funds Emails")[4] instead of selectively attaching only that portion of the correspondence most favorable to Bayside, it would have been evident that the Debtors were exploring an unconditional release of the payments to Bayside. The emails clearly demonstrate that the Debtors were attempting to assess the structure of the Bayside fund that would be receiving the Escrowed Payments, and the ability to recover those payments in the event any appeal of the Make-Whole Order was successful. However, neither Mr. Stamer, nor anyone else representing Bayside, ever responded to these basic inquiries (which, as of today, still have not been responded to).

4. Thereafter, Mr. Hansen called Mr. Stamer on at least two occasions and offered to unconditionally release the Escrowed Payments to Bayside. On the first occasion, Mr. Hansen was informed that Bayside would be unwilling to accept the Escrowed Payments under any circumstances, including tender made free from any conditions, since receiving such payments would create certain "tax problems" for Bayside.[5] On the second occasion, Mr. Hansen was informed that Bayside was simply not interested in having the Escrowed Payments released to it. Regardless, as detailed in the letter attached as Exhibit C (the "Release Letter") from the Reorganized Debtors to Bayside (a copy of which has also been contemporaneously sent to Bayside via overnight mail and email), an offer of unconditional release of the Escrowed Payments (subject to disgorgement if the Creditors' Committee is ultimately successful with

---

[4] The Release of Funds Emails are attached hereto as Exhibits A and B.

[5] To date, neither Bayside, nor its counsel, has clarified what "tax problems" would be created for Bayside if the Escrowed Payments were to be released. Accordingly, the Reorganized Debtors have been unable to assess the validity of such claims.

-3-

respect to its appeal of the Make-Whole Order) has now been made *in writing* by the Reorganized Debtors to Bayside.

5.	Notwithstanding the foregoing, at the time the Debtors sought Court approval to enter into the Ad Hoc DIP Facility, they could have tendered the Make-Whole Payment to Bayside (subject to disgorgement in connection with the Creditors' Committee's investigatory right and the subsequent Make-Whole Litigation). The Debtors instead opted to establish the Escrow Account. However, as this Court is aware, the purpose of the account was to ensure that the Debtors had the ability to make the Make-Whole Payment once a court of appropriate jurisdiction determines, by final non-appealable order, Bayside's entitlement to the Escrowed Payments. The Escrow Account was never intended to ensure that Bayside would continue to earn Default Interest and Other Fees during the pendency of any appeal that resulted from the Make-Whole Order.

6.	Nevertheless, Bayside's failure to articulate a justifiable reason as to why it will not accept the funds, even condition-free, is telling—especially in light of the fact that the Reorganized Debtors are unaware of any way in which Bayside will be prejudiced by accepting tender. As the Creditors' Committee noted in the Motion, the only logical conclusion is that Bayside wishes to keep such payments in the Escrow Account so that it may exert undue pressure on the Reorganized Debtors in any settlement negotiations with respect to the Make-Whole Appeal, and so that such payments continue accruing Default Interest at the rate of 17.25% at the expense of the Reorganized Debtors' estates.

7.	The Reorganized Debtors continue to stand ready to tender the Escrowed Payments to Bayside (subject to disgorgement), without imposing any conditions on such tender.

Moreover, they believe that the Release Letter will clear up any confusion that Bayside may have with respect to the previous offers of tender. The Reorganized Debtors are hopeful that Bayside will accept the unconditional tender offered in the Release Letter, and the issues raised in both the Motion and the Objection will be resolved while the appeal of the Make-Whole Order moves forward to final resolution.

**RESERVATION OF RIGHTS**

The Reorganized Debtors expressly reserve all of their rights to supplement this Joinder and Limited Response and further respond to the Objection on any and all appropriate grounds.

Dated: Wilmington, Delaware
August 9, 2013

DUANE MORRIS LLP

*/s/ Christopher M. Winter*
Michael R. Lastowski (No. 3892)
Christopher M. Winter (No. 4163)
Jarret P. Hitchings (No. 5564)
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
(302) 657-4900

-and-

STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Jonathan D. Canfield
180 Maiden Lane
New York, New York 10038
(212) 806-5400

*Counsel for the Reorganized Debtors*